IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. LEWIS AND | : | No.  4:CV 06-1862 |
| PATRICIA A. LEWIS, | : | |
| Plaintiffs, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| ATLAS VAN LINES, INC. | : | |
| Defendant. | : | |

## MEMORANDUM

**May 30, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court Defendant Atlas Van Lines, Inc.'s Motion for Reconsideration, or, in the Alternative, Motion for Entry of Final Order to Permit Filing of Interlocutory Appeal ("the Motion") (doc. 20) filed on February 8, 2007.

For the following reasons, the Motion will be granted.

**PROCEDURAL HISTORY**:

On January 30, 2007, this Court issued a Memorandum and Order ruling that the Carmack Amendment, 49 U.S.C. § 14706, did not control the type of injuries sustained by the Plaintiffs as a result of the Defendant's conduct and denying the Defendant's Motion to Dismiss.

1

Following the entry of our January 30, 2007 Memorandum and Order, the Defendant filed the pending Motion, arguing that the Court committed a clear error of law in holding that the Carmack Amendment was inapplicable to the case *sub judice*.  The Motion has been fully briefed by the parties and is therefore ripe for our review.

**STANDARD OF REVIEW**:

Motions for reconsideration should be granted sparingly as federal courts have a strong interest in the finality of judgments.  Burger King Corp. v. New England Hood & Duct Cleaning Co., 2000 U.S. Dist. LEXIS 1022, at *2 (E.D. Pa. 2000).  "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Id. (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  "A motion for

reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Abu-Jamal v. Horn, 2001 WL 1609761, at *9 (E.D. Pa. 2001).


**FACTUAL BACKGROUND**:

Plaintiffs Richard J. and Patricia A. Lewis ("Plaintiffs") entered into a contract to sell their residence at 3143 Seaks Run Road, Glen Rock, York County, Pennsylvania, with a settlement to be held before August 27, 2004. The sales agreement provided that the Plaintiffs would deliver "a vacant building" at the time of the closing. In order to transport their household possessions from their home in Pennsylvania to their new home in New York, the Plaintiffs entered into a contract with Warners Moving and Storage ("Warners"), an agent of the Defendant with Defendant Atlas Van Lines, Inc. ("Atlas"). Warner was to box the household belongings of the Plaintiffs, load the same on one or more appropriate motor vehicles, and deliver the same to the Plaintiffs' new residence in Alpine, New York.

A letter memorializing this agreement, dated July 27, 2004, was issued and executed by a sales representative of Warners. In pertinent part, the letter agreement provided as follows:

This letter is to confirm that Warners Moving and Storage will arrive at

your home on 8/23 & 8/24 to box the household belongings with
loading the household effects on 8/25 & 8/26.  Delivery is scheduled
for 8/31 or 9/1.

(Rec. Doc. 1, Ex. 2).

Plaintiffs allege that pursuant to the contract, packers from Warners

appeared on August 23 and 24, 2004 and boxed up the household belongings.  At

approximately 12:00 noon on August 25, 2004, Warners delivered a moving van to

the Plaintiffs' Pennsylvania residence and Warners engaged in loading household

belongings into the van until 5:00 p.m., at which time Warners advised the Plaintiffs

that the moving van would be taken back to Warners' place of business because

the tractor and crew were needed to handle a move to North Carolina on August

26, 2004. (Complaint, ¶14).

On August 26, 2004, Warners failed to appear and Plaintiffs attempted

several times to contact Warners.  Plaintiffs spoke with Joe Kilgore ("Kilgore"),

who allegedly told them that Warners was "working on it and we'll take care of

you."  (Affidavit of Richard J. Lewis, Rec. Doc. 12, Ex. A at ¶5).  No one

appeared on behalf of Warners on August 27, 2004 to complete the loading of the

van with Plaintiffs' household belongings. Plaintiffs allege they contacted Warners

on August 27, 2004 and spoke to Jeff Warner at approximately 12:00 noon.  Mr.

Warner advised the Plaintiffs that there were no licensed drivers available to deliver

a moving van to the Plaintiff's residence.  (Complaint, ¶16).  Plaintiffs alleged that

Plaintiff Richard Lewis told Jeff Warner that his "company was jeopardizing the

sale of [his] property and that '[he] would hold them responsible.'" (Plaintiff's

Aff., ¶6).

Because the Plaintiffs were unable to comply with the terms of the agreement

of sale of their Pennsylvania residence by delivering a vacant home to the

purchasers, they were in default under the sales agreement and the purchasers

terminated the transaction at approximately 5:00 p.m. on August 27, 2004.

(Complaint, ¶17).  Plaintiffs allege that they contacted Mr. Warner a second time on

August 27, 2004 and told him that the closing was not occurring because the house

was not vacant and were informed that "the best he could do was to guarantee

everything would be out by 12:00 noon on Saturday, August 28, 2004." Warners

delivered a moving van to the Plaintiffs' residence on August 28, 2004 and

Warners' employees worked until approximately 9:00 p.m., and completed loading

the next day.  (Plaintiff's Aff. ¶¶7-8).

Plaintiffs' interstate shipment was moved pursuant to Atlas' Household

Goods Bill of Lading and Freight Bill Number C64174.  (Rec. Doc. 5, Ex. B).

Plaintiffs allege that they were first shown the Bill of Lading on August 26, 2004,

when Plaintiff Richard Lewis signed the document indicating he reviewed the items

to be shipped.  Plaintiffs further allege that it was signed again by Plaintiff Richard Lewis on September 3, 2004 when the items were delivered in New York.

On October 26, 2004, Plaintiffs' attorney sent a letter to the Defendant making a claim for the losses arising out of the breached contract, identifying those losses as "loss of profit on the sale of their residence, additional mortgage payments and that Mr. and Mrs. Lewis have had to pay on two mortgages on their Pennsylvania residence which otherwise would have been paid off at closing, and various other miscellaneous expenses they would not have otherwise incurred." The letter goes on to explain that an exact number for the loss could not be provided "until they are able to sell their Pennsylvania residence." (Rec. Doc. 11, Ex. 2).

In response to the October 26, 2004 letter, Warners, through counsel, sent a letter to Plaintiffs' attorney dated November 4, 2004, wherein receipt of the October 26, 2004 letter was acknowledged.  Warners' letter requested additional information and documentation from Plaintiffs in an effort to evaluate the claim. (Rec. Doc. 5, Ex. D).

Plaintiffs allege that their Pennsylvania property was sold on June 3, 2005 pursuant to an Agreement of Sale executed on March 14, 2005.  On November 9, 2005, Plaintiffs sent a letter to Defendant fully explaining the damages after the sale

of Plaintiffs' residence and providing a detailed spreadsheet showing expenses

incurred and losses because of the breached contract. (Rec. Doc. 11, Ex. 4).

**DISCUSSION**:

The Defendants argues that the actions and alleged omissions related to the

packing and loading of Plaintiffs' goods – and the alleged resultant failure to

remove all of the goods from the Plaintiffs' Pennsylvania residence – are clearly

and unquestionably within the scope of the Carmack Amendment and this Court's

ruling to the contrary was a clear error of law. The Defendants submit that the

Court's analysis of whether the July 27, 2004 letter constituted a separate

"operative document" which controlled the packing of Plaintiffs' household goods

is misplaced, because the packing and loading services provided by the Defendant

are clearly within the exclusive scope of the Carmack Amendment.

**A.     The Carmack Amendment**

In 1906, Congress enacted the Carmack Amendment which created a

national policy regarding an interstate carrier's liability for damages arising from the

interstate transportation of goods. See 49 U.S.C. § 14706; New York, New Haven

& Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 131 (1953). The Carmack

Amendment "codifies the common-law rule making a carrier liable, without proof

of negligence, for all damage to the goods transported by it, unless it affirmatively

shows that the damage was occasioned by the shipper, acts of God, the public

enemy, public authority, or the inherent vice or nature of the commodity."

Secretary of Agriculture v. United States, 350 U.S. 162, 166 n. 9 (1956).

The Carmack Amendment provides the exclusive remedy against an

interstate common carrier for breach of a carriage contract.  Diamond Transp.

Group, Inc. v. Emerald Logistics Solutions, Inc., 2006 U.S. Dist. LEXIS 42918, *7

(E.D. Pa.).  Under the Carmack Amendment, carriers are fully liable for actual loss

or injury to property.  Carmana Designs, Ltd. v. North Amer. Van Lines, Inc., 943

F.2d 316, 319 (3d Cir. 1991).  To establish a *prima facie* case against a carrier

under the Carmack Amendment, a shipper must prove (1) delivery of goods to the

initial carrier in good condition; (2) damage of the goods before delivery to their

final destination; and (3) the amount of damages.  Paper Magic Group, Inc. v. J.B.

Hunt Transport, Inc., 318 F. 3d 458, 461 (3d Cir. 2003).

"Packing" and "loading" of household goods are considered "transportation

services" that fall within the scope of the Carmack Amendment.  49 U.S.C. § 13102

specifically provides that "handling, packing [and] unpacking" are services included

within the definition of "transportation" for purposes of Carmack.  Additionally, 49

U.S.C. § 13102(12) provides that a "household goods motor carrier" offers within

its scope of services "protective packing and unpacking of individual items at

8

personal residences" and "loading and unloading at personal residences."

The scope of the Carmack Amendment's coverage is broad. The United States Supreme Court succinctly described the breadth of the Carmack Amendment in <u>New York, Philadelphia and Norfolk R.R. Co. v. Peninsula Produce Exch. Of Md.,</u> 240 U.S. 34, 38 (1916), when it stated that the Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination."

### B. Reconsideration Analysis

In our January 30, 2007 Memorandum and Order, we concluded that the Carmack Amendment did not govern this action because the type of injury sustained by Plaintiffs was not contemplated by Carmack. Within the instant Motion, Defendants argue that the alleged actions, omissions and resulting injuries are within the scope of the Carmack Amendment.

The Defendant submits that once it began the "transportation" services of packing and loading the Plaintiffs' household goods on August 23, 2004, the controversy arising thereafter automatically fell completely and exclusively within the scope of the Carmack Amendment. Defendant further agues that the existence or enforceability of the July 27, 2004 "letter agreement" does not affect whether the

9

Carmack Amendment applies, but only bears relevance to whether the Defendant has notice of the consequential damages which would apply if the transportation services were not timely performed by it.

As noted above, the Carmack Amendment is "comprehensive" and specifically covers "packing" and "loading" of household goods.  See 49 U.S.C. § 13102.  Upon review of the Motion and supporting briefs, it is clear to the Court that we committed an error of law in holding that the Carmack Amendment did not apply to the instant controversy inasmuch as our reliance on the July 27, 2004 "letter agreement" was misplaced.  Plaintiffs' damages, albeit unforeseen, were incurred as result of the Defendant's alleged "failure to discharge [its] duty with respect to any part of the transportation to the agreed destination."  Peninsula Produce, 240 U.S. at 38.

### C.    Rule 12(b)(6) Analysis

In ruling that we erred in failing to apply the Carmack Amendment to the case *sub judice*, we must now determine whether Plaintiffs' claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with the overlay of the Carmack Amendment.

The Carmack Amendment itself does not state what must be included in a claim against a carrier but rather prohibits the carrier from shortening the time for such a claim, stating that "a carrier may not provide by rule, contract or otherwise a

10

period of less than nine months for filing a claim against it under this section and a period of less than two years from bringing a civil action against it under this section." 49 U.S.C. § 14706(e). Federal regulations govern the filing and processing of claims for delay in the delivery of household goods. See 49 C.F.R. § 370. These regulations are incorporated into the Defendant's tariffs, which are incorporated into the Bill of Lading. 49 C.F.R. §370 sets forth the following requirements for filing a delay claim:

    (a)    A written or electronic communication filed within the time limits specified in the bill of lading;

    (b)    The communication must contain facts sufficient to identify the baggage or shipment at issue;

    (c)    The communication must assert liability for the loss, damage or delay against the carrier; and,

    (d)    The communication must assert a claim for the payment of a specified or determinable amount of money.

    Plaintiffs contend that the October 26, 2004 letter from Attorney Gent meets these requirements because it contains facts sufficient to identify the shipment, asserts liability and makes a claim for the payment of a determinable amount of money, that being "Mr. and Mrs. Lewis' losses including, but are not limited to, loss of profit on the sale of their residence, additional mortgage payments that Mr. and Mrs. Lewis have had to pay on two mortgages on their Pennsylvania residence

which otherwise would have been paid off at closing, and various other miscellaneous expenses they would not have otherwise incurred." Defendant argues that Plaintiffs failed to provide timely notice of a specified or determinable claim to it or its agent within the time period prescribed by the Bill of Lading.[1] Defendant argues that Plaintiffs, by their own admissions, became aware of the "new" purchase of their Pennsylvania residence when they executed the Agreement of Sale on March 14, 2005, and therefore they had over two and a half months (until June 3, 2005) to ascertain their specific and determinable damages. Additionally, Defendant argues that the closing on the Pennsylvania residence occurred exactly on June 3, 2005, and surely the Plaintiffs would have known the exact amount of damages allegedly caused by the delayed pick up of their goods at the completion of the closing on June 3, 2005.  Instead, Plaintiffs transmitted a specified damages amount to the Defendant under cover of letter dated November 9, 2005.  The spreadsheet indicating the amounts shows a transmission date of July 8, 2005, but nonetheless, the Defendant did not receive it until November 9, 2005.

There is a split in the federal circuit courts concerning the standard to be used to determine whether a shipper's damages claim is sufficient.  The dueling

---

[1] Plaintiffs' household goods were delivered to their residence in Alpine, New York on September 3, 2004.  Pursuant to the Bill of Lading, the deadline for filing a claim with the carrier was nine months later, or June 3, 2005.  (Rec. Doc. 5, Ex. B).

standards are "strict compliance" and "substantial performance."  Plaintiffs cite to dicta contained in <u>S&H Hardware & Supply v. Yellow Transport,</u> 432 F.3d 550, 554 (3d Cir. 2005) to support its contention that the Third Circuit has indicated it would follow the "substantial performance" standard.  In <u>Yellow Transport</u>, the Third Circuit discussed the applicability of the "substantial performance" standard as it related to whether a communication was to be considered written notice at all. The case did not address the contents, adequacy, sufficiency or determinability of the notice of damages claim, and therefore is simply not persuasive on the point for which Plaintiffs cite it.

The parties seem to concede that if the Court utilized the "strict compliance" standard that Attorney Gent's letter would not be considered sufficient notice because no firm dollar amount was included.  However, even if the Court applied the "substantial performance" standard, the Plaintiffs have not cited to, nor have we been able to find, any case where the shipper provided the carrier with no dollar amount whatsoever. What is clear is that the Plaintiffs failed to provide the Defendant with any additional information regarding the amount of their alleged claims until November 9, 2005, which was over sixteen months from the date of the alleged delay in the pickup of their household goods and over five months from the deadline created by the Bill of Lading.  This delay in communication occurred even

13

though the Plaintiffs knew of the sale price of their Pennsylvania residence when they executed the Agreement of Sale on March 14, 2005 and closed on the sale on June 3, 2005.[2]  We can find no reason to excuse the Plaintiffs' delay in communicating the specified damages to the Defendant. Because Plaintiffs' notice was insufficient as a matter of law, their claim is time-barred and shall be dismissed.

<u>**CONCLUSION**</u>:

Accordingly, for the foregoing reasons, we shall grant the Defendant's Motion as we made a clear error of law in holding that the Carmack Amendment did not apply to the instant action.  In applying the Carmack Amendment to the matter, we find that the Plaintiffs have failed to state a claim upon which relief can be granted. Their notice to the Defendant was insufficient as a matter of law under Carmack because it failed to state specified or determinable damages.  Therefore, the action shall be dismissed.  An appropriate Order shall issue.

---

[2] While an exception to timely notice is available to a shipper who cannot, with "reasonable diligence" ascertain the extent of its loss, this is certainly not the case here for the reasons stated herein. <u>See</u> <u>Cherkis v. Atlas Van Lines</u>, 59 F. Supp. 2d 203, 207 (D. Mass. 1999).